UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN CORSINI,

    Plaintiff,                                          Civil Action No. 19-CV-10627

vs.                                                HON. BERNARD A. FRIEDMAN

CITY OF HAZEL PARK, et al.,

    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT CITY OF HAZEL PARK'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant City of Hazel Park's motion for summary judgment [docket entry 35]. Plaintiff has responded and defendant has replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

Plaintiff alleges that he was wrongfully forced to retire from his position as a "Captain/paramedic" with the City of Hazel Park fire department. *See* Compl. ¶¶ 9-10, 35. Plaintiff is suing the City of Hazel Park ("the City"), Edward M. Lichten, MD ("Dr. Lichten"), and Edward Lichten, MD, PC ("Lichten PC") (collectively "defendants") under Michigan common law and 42 U.S.C. § 1983. *See id.* ¶¶ 1, 4-6.

Plaintiff states that "[i]n or about February[] 2017, Defendant City, through its agent, Fire Chief Richard Story . . . informed employees, including Plaintiff, that the City was encouraging employees to 'save the City money' by going to Defendants Lichten and Edward Lichten, MD, PC . . . for medical treatment in lieu of using other medical providers." *Id.* ¶ 13. Despite his objections, plaintiff alleges that he "felt pressured" to see Dr. Lichten, who prescribed plaintiff certain injections and medications. *Id.* ¶¶ 14-17. Plaintiff states that he informed Dr. Lichten that he was "not feeling

well from the injections," and questioned Dr. Lichten's "advice, treatment, methods, and strategies," as well as whether his practices were "ethical or legal." *Id*. ¶ 19. Plaintiff further alleges that these comments led Dr. Lichten to terminate their physician-patient relationship, and that plaintiff's complaints were relayed to his superiors within the fire department. *Id*. ¶¶ 21-24. Plaintiff states that

> [o]n August 10, 2017, Chief Story issued a memorandum of "incidents and concerns," about Plaintiff, detailing alleged conduct and performance deficiencies on the part of Plaintiff, with the apparent purpose of informing a "Dr. Clark," of Alpha Psychological Services, of information about Plaintiff as a basis to do a "fitness for duty" evaluation.

*Id*. ¶ 25. Plaintiff alleges that this same memorandum placed plaintiff on administrative leave of absence. *See id*. ¶ 28. Following the fitness for duty evaluation, plaintiff states that he was given two options: "1) to go through the program of therapy that Dr. Clark had advised, and that Plaintiff's work would now be limited, or 2) Plaintiff could buy out his remaining seniority time to achieve his maximum pension and leave the City's employ." *Id*. ¶ 31. Plaintiff asserts that it was "made clear" that if he failed to select option 2, he would be terminated. *Id*. ¶ 32. Plaintiff alleges that he therefore "felt forced to, and did, submit papers to buy out his remaining seniority (3 full years) so that he could retire from the City with full pension." *Id*. ¶ 33. He states that this buyout cost him $89,000, "which was taken from Plaintiff's deferred compensation account" and was done under coercion. *Id*. ¶¶ 34-35.

Plaintiff's complaint includes three claims: Tortious interference with business relationship or expectancy against Dr. Lichten and Lichten PC (Count I); discharge in violation of public policy against all defendants (Count II); and retaliation for exercising his first amendment right to free speech in violation of § 1983 against all defendants. *See id*. ¶¶ 36-54.

2

**I. Defendant City of Hazel Park's Motion for Summary Judgment**

In the instant motion, the City argues that the trial wellness program with Dr. Lichten was offered on a voluntary basis to employees as "an ancillary product in addition to the [Blue Cross Blue Shield] health care plan." Def.'s Br. at 1-2. Defendant contends that Dr. Lichten severed his physician-patient relationship with plaintiff following "an angry outburst in his medical offices about billing," which was described by office staff as "a temper tantrum in the office's lobby." *Id*. at 2 (internal quotation marks omitted). Following this incident, the City states that plaintiff "participated in additional questionable behavior," including "threaten[ing] the life and safety of a subordinate firefighter while on a fire run, [speaking] poorly about the Department, and engag[ing] in behavior that was unbecoming of an officer." *Id*. at 3. Collectively, this behavior "ultimately led Chief Story to question [plaintiff's] leadership and decision-making abilities as a Captain, resulting in a fitness for duty evaluation." *Id*. Defendant adds that

> [t]he main incident which led to Chief Story's decision to have Plaintiff undergo . . . a fitness for duty evaluation occurred during a July 23, 2017 fire run. Specifically, Plaintiff ordered one of his subordinates, Firefighter Michael Khoury, to gain access to the attic via a 16 in. x 16 in. "scuttle-hole" during the course of an active fire run. When Firefighter Khoury informed Plaintiff that he could not fit, Plaintiff insulted him and tried to shove him into the attic space. Plaintiff's order threatened the life and safety of Firefighter Khoury. At the fire scene, Firefighter Khoury, immediately reported this incident to Chief Story.

*Id*. at 3-4 (citations omitted). Further, the City states that when Chief Story attempted to investigate this incident, he "learned that Plaintiff's subordinates did not want to put their concerns in writing due to fear of retaliation from Plaintiff." *Id*. at 4.

Other incidents referenced by defendant include (1) an incident at a local bar that resulted in the police being called and plaintiff being banned from the establishment; (2) reports that

plaintiff was "speaking poorly of the Department and encourag[ing] newer Department members to find employment elsewhere;" and (3) a photograph posted to social media in violation of department policy. *See id*. at 4-5. Defendant contends that Dr. Clark's fitness for duty evaluation revealed that plaintiff "had a history of anger and verbal aggression, impaired insight and judgment, verbal loss of control, pervasive anxiety, anxious mistrust of others, a need to maintain rigid control, [and] seeks to vindicate past humiliation by demeaning others," all of which affected his ability to perform professionally. *Id*. at 5-6. According to defendant, Dr. Clark determined that plaintiff "could return to work without restriction **only if** he engaged in counseling or psychotherapy." *Id*. at 6 (emphasis in original).

Defendant states that on August 31, 2017, plaintiff was provided the option to either (1) participate in the recommended counseling and relinquish all command responsibilities until the counseling was complete or (2) retire. *See id*. At a subsequent meeting held on September 11, 2017, plaintiff's superiors and union representatives discussed alternative courses of action, such as cutting plaintiff's salary, demoting plaintiff, and entering a "last chance agreement" to ensure appropriate behavior in the future. *Id*. at 6-7. Defendant argues that at all relevant times plaintiff was represented by his union president, plaintiff was made aware of his options, and he "voluntarily elected to retire, effective October 30, 2017." *Id*. at 7.

Defendant contends that plaintiff's retaliatory discharge claim (Count II) fails because (1) defendant is entitled to governmental immunity and (2) plaintiff voluntarily sought treatment from Dr. Lichten. *See id*. at 9-10. As to plaintiff's First Amendment claim under § 1983 (Count III), defendant argues that plaintiff (1) did not engage in protected speech, as the speech at issue "only advance[d] Plaintiff's private interest"; (2) has failed to establish but-for causation given

4

the number of intervening incidents; and (3) has failed to establish any adverse action as defined by relevant case law. *See id*. at 10-15. Finally, defendant argues that plaintiff has failed to present "sufficient evidence to establish a causal connection between [City] policy and the deprivation of [his] constitutionally protect rights," and he therefore cannot establish municipal liability. *Id*. at 15-16.[1]

In response, plaintiff contends that the list of incidents included in Chief Story's memorandum "is filled with hearsay, is completely undocumented, and is not supported in Defendant's motion with legally admissible foundation." Pl.'s Resp. Br. at 8. Plaintiff states that he was ultimately presented with four options: (1) "return to work with a demotion to lieutenant, at lieutenant's pay, plus ride the ambulance every day" ("the duty of the lowest ranked members of the fire department"); (2) "Defendant would fire Plaintiff"; (3) "Plaintiff could return to work as a firefighter at firefighter pay, go through Dr. Clark's program, and ride the ambulance"; or (4) retire early. *Id*. at 11-12. As to the latter option, plaintiff argues that a union representative told him that the City wanted to "wash their hands of [Plaintiff] . . . and that it was because of the Lichten incident(s)." *Id*. at 12. Plaintiff states that "faced with the series of offers being made to him, each one increasing in its hostility and risk to Plaintiff, Plaintiff agreed, on an involuntary basis, to retire." *Id*. at 13.

---

[1] The City's motion for summary judgment does not address Count I, interference with business relationship or expectancy against Dr. Lichten and Lichten PC, as this claim is only asserted against the Lichten defendants. The City notes that "Dr. Lichten has not responded to the Complaint and is currently in default. Plaintiff's counsel has not filed a default motion. Multiple attempts were made to contact Dr. Lichten, however, no contact has been made. Dr. Lichten's practice is still open for business and accepting new patients." Def.'s Br. at 1 n.2.

As to defendant's legal arguments, plaintiff contends that (1) "Plaintiff, as a licensed paramedic, had a duty and/or a right under law to report misconduct of another health care provider," *id*. at 14; (2) his concerns regarding Dr. Lichten's services constituted a matter of public concern and were a motivating factor in his firing, *see id*. at 18-19; and (3) in recommending Dr. Lichten's services, defendant was engaging in a proprietary function and therefore cannot benefit from governmental immunity. *See id*. at 16. At the least, plaintiff argues, the evidence he has presented establishes questions of fact sufficient to overcome defendant's motion for summary judgment. *See id*. at 21.

## II. Legal Standards and Analysis

> Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court must review all materials supplied, including pleadings, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*United States v. White*, No. 17-6022, 2018 WL 4215614, at *2 (6th Cir. July 11, 2018).

### A. Discharge in Violation of Public Policy (Count II)

Under Michigan law, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MICH. COMP. LAWS § 691.1407(1). Michigan courts have consistently held that retaliatory discharge constitutes an intentional tort within the scope of § 691.1407(1). *See O'Connor v. Redford Twp.*, No. 09-10792, 2009 WL 2488095, at *5 (E.D. Mich. Aug. 13, 2009) (citing *Thompson v. Wayne*

6

*Cnty. Treasurer*, No. 277837, 2008 WL 1986269 (Mich. Ct. App. May 8, 2008)). Consequently, to survive a motion for summary judgment, a plaintiff raising a claim of retaliatory or otherwise wrongful discharge against a governmental agency must "plead a valid basis for avoiding governmental immunity." *Id*. Relevant to this case, § 691.1413 states that

> [t]he immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees.
>
> The Michigan Supreme Court has previously stated that
>
> [i]n determining whether the agency's primary purpose is to produce a pecuniary profit . . . certain considerations should be taken into account. The first is whether a profit is actually generated.
>
>> The fact that a governmental agency pursues an activity despite consistent losses may be evidence that the primary purpose is not to make a pecuniary profit, but it is not conclusive evidence. Conversely, the fact that the activity consistently generates a profit may evidence an intent to produce a profit. [*Id*. at 258, 393 N.W.2d 847 (citations omitted).]
>
> The second consideration is "where the profit generated by the activity is deposited and how it is spent."
>
>> If the profit is deposited in the governmental agency's general fund or used to finance unrelated functions, this could indicate that the activity at issue was intended to be a general revenue-raising device. If the revenue is used only to pay current and long-range expenses involved in operating the activity, this could indicate that the primary purpose of the activity was not to produce a pecuniary profit. [*Id*. at 259, 393 N.W.2d 847 (citations omitted).]

*Coleman v. Kootsillas*, 575 N.W.2d 527, 530 (Mich. 1998) (concluding that "[i]t is clear that the

primary purpose of the city of Riverview landfill was to produce a pecuniary profit. The city's financial records establish that, from 1982 thro.ugh 1990, the landfill consistently generated a substantial profit, ultimately exceeding 7 million dollars.").

Based on the facts alleged, the Court concludes that plaintiff has failed to plead a valid basis for avoiding governmental immunity. In plaintiff's complaint, he states that "the City was encouraging employees to 'save the City money' by going to Defendants Lichten and Edward Lichten, MD, PC" and that "ultimately the City wished its employees to use Lichten for all their medical care, so that the City could save money on insurance." Compl. ¶¶ 13-14. However, plaintiff acknowledges that Dr. Lichten's services were made available on a voluntary basis and that employees were able to maintain their insurance coverage under Blue Cross Blue Shield. *See* Def.'s Ex. 1, at 109, 115, 119. Nowhere in plaintiff's complaint does he indicate that the City made a pecuniary profit from this limited trial program, nor does he state where or how the City's alleged profits from the program were deposited or spent. Moreover, the proprietary function exception only applies "to actions to recover for bodily injury or property damage," § 691.1413, neither of which are alleged in this case. The Court thus concludes that defendant's motion for summary judgment is granted as to this claim because plaintiff has failed to present facts sufficient to defeat the City's entitlement for governmental immunity.

### B. Retaliation for Exercising First Amendment Right to Free Speech in Violation of § 1983 (Count III)

> In order for an employee to establish a claim of First Amendment retaliation, the employee must demonstrate that: (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

8

*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). To qualify as constitutionally protected speech, the speech at issue must be "fairly characterized as constituting speech on a matter of public concern." *Id*. "Speech falling into this category includes informing the public that a governmental entity failed to discharg[e] its governmental responsibilities or bring[ing] to light actual or potential wrongdoing or breach of public trust [on the part of a governmental entity or any officials therein]." *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (internal quotation marks omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

> The Sixth Circuit has stated that
>
> > our circuit has distilled the "public concern" test by stating that the court must determine: the "focus" of the speech; "the point of the speech in question"; "to what purpose the employee spoke"; "the intent of the speech"; or "the communicative purpose of the speaker."
> >
> > As a corollary to this "focus" test, we have held that the proper inquiry is not what might be "incidentally conveyed" by the speech, and that "passing" or "fleeting" references to an arguably public matter do not elevate the speech to a matter of "public concern" where the "focus" or "point" of the speech advances only a private interest.

*Farhat v. Jopke*, 370 F.3d 580, 592-93 (6th Cir. 2004) (citations omitted, compiling cases).

In the present case, plaintiff's verbal altercation with Dr. Lichten does not qualify as "a matter of public concern." While the content of plaintiff's speech is not entirely clear, based on plaintiff's briefs and testimony it appears to have focused on his dissatisfaction with medical treatment that he voluntarily pursued and/or his frustration with having to pay for this medical treatment. In his complaint, plaintiff states that he questioned Dr. Lichten's medical treatment,

9

practices, and ethics during an office visit on July 13, 2017, and that Dr. Lichten reported this confrontation to Chief Story. *See* Compl. ¶¶ 19, 22. In his response to the instant motion, plaintiff contends that he "engaged in conduct protected under the First Amendment when he spoke to Chief Story about the dangers of Dr. Lichten's 'wellness' program." Pl.'s Resp. Br. at 18. However, contrary to both of these treatment-focused allegations, plaintiff admitted that he confronted Dr. Lichten on July 17, 2017, regarding a billing dispute over whether plaintiff or the City was responsible for covering the cost of Dr. Lichten's treatments. *See* Def.'s Ex. 1 at 41-44. This latter account is confirmed by Chief Story, *see* Def.'s Ex. 3 at 43, and Chief Story's memorandum that placed plaintiff on administrative leave. *See* Def.'s Ex. 4. Regardless of whether plaintiff's frustrations with Dr. Lichten pertained to the medical treatment he received or his billing obligations, both issues advance only plaintiff's own private interests.

> The Supreme Court has stated that
>
> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick,* 461 U.S. at 146. Because the speech at issue "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for [the Court] to scrutinize the reasons for [plaintiff's] discharge." *Id*. Defendant is therefore entitled to summary judgment on this claim as well.

### III. Conclusion

Accordingly,

IT IS ORDERED that the City of Hazel Park's motion for summary judgment is granted [docket entry 35].

                                      s/Bernard A. Friedman
                                      BERNARD A. FRIEDMAN
Dated: June 30, 2021          SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan

11